Alfonso Castells and Aurelia Castells v. Commissioner.
Castells v. Commissioner
Docket No. 74008.
United States Tax Court
T.C. Memo 1961-275; 1961 Tax Ct. Memo LEXIS 76; 20 T.C.M. (CCH) 1442; T.C.M. (RIA) 61275; September 29, 1961
Cornelius Sacco, Esq., 551 Fifth Ave., New York, N. Y., for the petitioners. Warren S. Shine, Esq., and Herbert Rothenberg, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Deficiencies in income tax and additions to tax were determined against petitioners as follows: Additions to Tax
Sec.
Sec. 294
Sec. 294
6653(b)
(d)(1)(A)
(d)(2)
I.R.C.
I.R.C.
I.R.C.
Year
Deficiency
1954
1939
1939
1954
$1,728.50
$864.25
$169.31
$109.83 Respondent concedes error with respect to the addition to tax under section 294(d)(2) of the 1939 Code. Petitioners do not contest the addition to tax under section 294(d)(1)(A) of the 1939 Code. Petitioners concede that they failed to report taxable income received by them for the *77 year 1954. After other concessions by both parties, the only question remaining for our determination is whether any part of the deficiency in income tax for 1954 was due to fraud on the part of petitioners, so as to justify imposition of the addition to tax for fraud. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners are husband and wife residing in New York, New York. They filed their income tax return for the taxable year 1954 with the district director, Upper Manhattan (now Manhattan) district, New York. Petitioner Alfonso Castells (hereinafter referred to as petitioner) was born in Spain in 1893 and came to the United States in 1915. His formal education stopped before he was 10 years old. In 1954 and for a 15-to 20-year period prior thereto, petitioner had been employed as one of the regular banquet waiters at the Hotel Pierre (hereinafter sometimes referred to as the hotel) in New York City, which is a luxury class establishment in which many of New York City's more expensive banquets are held. In 1952 the hotel banquet manager instituted a bookkeeping system, by which he maintained a weekly record of all tips earned by the banquet *78 waiters. These records were kept on sheets which listed each banquet or social function held during the preceding week and each waiter's share of the total tips received. The sheets, which were posted outside of the banquet manager's office, were totalled weekly and contained a line for the signature of each waiter. As a general rule, the tips per function were divided equally among the regular banquet waiters serving the function. In 1954 there were 27 to 33 regular banquet waiters employed by the hotel. On Thursday of each week the banquet manager distributed to the banquet waiters their share of the tips received for the preceding week, less any advances previously drawn. Payment was made outside of the banquet manager's office where the records, or sheets, were posted. Upon payment, each waiter would sign his name to the sheet, thus acknowledging the receipt of the tips. If a waiter believed that there was any discrepancy in the amount of tips received by him, he would inform the union delegate, who would negotiate an adjustment with the banquet manager. Each week one or two of the hotel's banquet waiters would find minor discrepancies between their own calculations of their *79 correct tips and the amount appearing on the banquet manager's records. Petitioner knew that the records of his weekly tips were kept by the banquet manager. Petitioner did not know that these records were readily available to him. From time to time petitioner paid gratuities to others in the hotel for various favors rendered petitioner pertaining to his work. Petitioner also contributed to funds to buy gifts for ailing co-workers. On Thursday of each week petitioner would also receive his wages for the past week. Wages were paid in cash by the paymaster's office, a separate department of the hotel. In 1954 petitioners reported $865 as income from tips, failing to report the amount of $1,625.05. Petitioner's cash receipts for wages for the 33 weeks he worked during 1954, after all deductions, were $1,314.87. Petitioners reported wage income from the hotel in the amount of $1,575.82, which included the value of meals furnished to petitioner. [1] Petitioners' return reflects adjusted gross income in the amount of $3,491.13. In 1929 petitioners invested a small *80 sum of money in stock, upon which there is presently a small paper profit. Petitioners also maintain two savings accounts in different New York City savings banks. In 1952 petitioners purchased for income-producing purposes a 13-room rooming house in New York City at a cost of approximately $32,000, subject to a mortgage. Petitioners operated this property themselves, maintaining records of their income and expenses (other than depreciation). Petitioners employed an accountant to prepare their 1954 income tax return and submitted to the accountant a summary sheet containing items of income and expenses. On this summary sheet petitioners listed the sum of $865 as income from tips. The accountant used these figures in preparing petitioners' 1954 tax return. No part of the deficiency in income tax for the taxable year 1954 is due to fraud with intent to evade tax. Opinion This seems to us another in the series of litigations in which respondent's agents in a mistakenly zealous crusade have lost sight of the forest in their preoccupation with something that is not even a small tree - more like a blade of grass. Unlike any case cited to us, the sole ground for respondent's charge *81 of fraud here is the omission for one year of a portion of the modest income which petitioner now admits he received. Cf., e.g., . Petitioner, whose formal education ceased when he was 10, who was not born in the United States, who is now well along in years, is a waiter by trade, and has been such for a long time. The year before us is 1954, now 6 years past. Either petitioner consistently understated his income from tips in the years before and after that, or he did not. If he did, no reason appears why respondent's agents, who did not even trouble to interview petitioner, should construct their case on a single year. Cf. If he did not, and this we must assume, since respondent's agents had the duty to carry out further investigations, it is powerful affirmative evidence that the single omission in the year in dispute was not intentional. There are numerous other bits of evidence strongly supporting this conclusion. Petitioner paid out some of his tip money for services rendered to him. Needless to say, he has no record of this, but respondent virtually concedes it: "* * * it is possible *82 that some small amount of his tip income may have gone to other employees for services * * *." To fail to take account of it even in the deficiency would have been error, (C.A. 2, 1930), had not petitioner stipulated the issue out of the case. Other payments, perhaps not properly deductible, were also in petitioner's mind. No record was given to petitioner by his employer at the end of the year of the amount of his tips, although it is true one was posted week by week. We are by no means convinced that access to the hotel records at the year's close was as easy as respondent would have us believe. But petitioner's failure to keep weekly records or to demand an inspection after the year was over were at most negligent acts in this one year. . The confusion that might have existed when social security and income tax withholding was applied to wages, but not to tips paid by the same employer, could well puzzle a more sophisticated tax computer than petitioner. Presumably, as required by law, the employer did give him a statement of total wages received, section 6051(a) of the 1954 *83 Code, but not of tips. And although a sizable percentage of the family income was derived from the operation of a rooming house, an apparently more fertile field for tax juggling, no suggestion appears from respondent of any fraud in this aspect of petitioner's reporting. Coupled with all this is petitioner's overstatement of his income from wages, which respondent has now conceded. This convinces us both that petitioner was not well equipped to deal with tax questions, and also that, since the errors went both ways, no fraud, and probably not even negligence, as distinguished from ignorance, is indicated. See When the smoke has cleared away, it appears that the entire issue is the addition to tax for fraud in the amount of $172.60. At least this assertion by petitioner is not controverted by respondent. Even were the burden on petitioner, we think he would have discharged it. We regret the loss of time to all concerned in this proceeding, which could assuredly have been put to better use. To take account of stipulated adjustments, Decision will be entered under Rule 50. Footnotes
1. Respondent concedes that the amount of $250 is to be eliminated from petitioner's gross income in this respect.↩